IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. RDB-21-0174 |
| ALEXANDER JUAREZ-SANCHEZ, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM ORDER</u>**

Defendant Alexander Juarez-Sanchez ("Defendant" or "Juarez-Sanchez") is charged in three counts of a four-count Indictment with the following offenses: conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl and 100 grams or more of heroin in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute 400 grams or more of fentanyl and 100 grams or more of heroin in violation of 21 U.S.C. § 841 (Count Two); and re-entry after deportation in violation of 8 U.S.C. § 1326(a) (Count Three).[1] (Indictment, ECF No. 3.) Presently pending before this Court are the Defendant's Motion to Suppress Tangible and Derivative Evidence (ECF No. 24); Motion to Suppress Tangible, Digital, and Derivative Evidence (ECF No. 25); Motion to Suppress Statements (ECF No. 26); and Motion for Leave to File Additional Pretrial Motions (ECF No. 27). The parties' submissions have been reviewed, and on April 25, 2022, this Court received evidence and heard the arguments of counsel at a motions hearing in this case. (Hrg

---

[1] On September 2, 2021, Juarez-Sanchez's sole Co-Defendant Domingo Ramirez-Roblero pled guilty before this Court to Count Four of the Indictment, which charged him separately with re-entry after deportation, as well as Count One. (Plea Agreement, ECF No. 20.)

Ex. List, ECF No. 53.) For the reasons stated on the record at the hearing and as supplemented below, the Defendant's motions to suppress (ECF Nos. 24, 25, 26) are DENIED. The Defendant's Motion for Leave to File Additional Pretrial Motions (ECF No. 27) is MOOT.

## BACKGROUND

This case arises out of traffic stop conducted on August 5, 2020 on Interstate 81 in Hagerstown, Maryland. Shortly before 9:07 a.m., Maryland State Police Master Trooper Craig Miller ("Trooper Miller"), who was assigned to the Pro-Active Criminal Enforcement (PACE) Team, observed from a stationary position on the side of the road a 2014 white Honda accord with Indiana tags traveling northbound in the right traffic lane at a distance too close to the vehicle in front of it, a gray SUV. Trooper Miller testified that the speed limit on the stretch of highway where he observed the white Honda is 60 miles per hour. He testified that he regularly monitors traffic on the highways of Western Maryland and looks to see that drivers keep a distance of approximately one car length per 10 miles per hour of speed between themselves and any vehicle in front of them. He also testified that the white Honda was traveling between one and two car lengths behind the gray SUV at the time he made his observation. Trooper Miller then activated his vehicle's emergency system and drove to catch up to the white Honda.

Dash cam footage starts 30 seconds before Trooper Miller activated his vehicle's emergency system. The first seconds of the footage show the white Honda traveling approximately two car lengths behind a gray SUV. (Gov. Exs. 1A, 1B.) The footage also depicts an audio and visual recording of the subsequent traffic stop. After Trooper Miller

and the driver of the white Honda pulled over on the right side of Interstate 81, Trooper Miller approached the passenger side of the Honda on foot. Trooper Miller testified that the occupants of the car had only slightly rolled down the passenger side window and that he needed to ask them to roll it down further to conduct the stop. Trooper Miller explained to the occupants that he had stopped the Honda because it was following too closely behind another vehicle. He then asked the driver for his license and registration. The driver explained that he did not have his driver's license and that he had lost his passport. The driver also began searching for the car's registration. Trooper Miller asked the driver to step out of the car to continue the conversation. The passenger remained in the Honda. Once outside of the car, the driver repeated that he did not have a license or any other form of identification. He also explained that the car belonged to his girlfriend's friend and that the friend had allowed him to use the vehicle to travel from Indiana to New York. The driver made mention of some connection to Mexico and to the fact that eventually the girlfriend's friend would allow for transfer of the car's title. Trooper Miller noted that the driver's hands were trembling and that his forehead appeared to glisten from perspiration.

      Trooper Miller asked the driver for his name. The driver indicated that his name was Gavino Perez-Aguilar and that he was born on July 19, 1992. Trooper Miller also asked the driver for the passenger's name. The driver hesitated and snapped his fingers as if to try to recollect. The driver then stated that his passenger's first name was Miguel and that he did not know the passenger's full name. Trooper Miller returned to his vehicle and called for a

canine team to meet him.[2] He then radioed the Honda's license plate information to a dispatcher for a records check. As Trooper Miller waited for the dispatcher's response, PACE team members Sergeant Christopher Shrout and Corporal David Yates arrived at the scene. Trooper Miller testified that Corporal Yates was trained in handling narcotics-detecting canines. Corporal Yates arrived with his canine partner, a dog certified and trained in narcotics detection.

Before conducting the canine sniff, officers had the passenger step out of the Honda, patted him down, and instructed him to wait with the driver by Trooper Miller's vehicle. While officers conducted the open-air sniff, Trooper Miller learned from the dispatcher that the Honda's Indiana tags were expired. After exiting his vehicle, Trooper Miller learned that the canine had returned a positive alert. Approximately 13 minutes had elapsed from the initial stop of the Honda to the positive canine alert. Officers then proceeded to search the Honda, in which they discovered three, kilogram packages of suspected narcotics and over $46,000 in U.S. currency. (Gov. Exs. 2A, 2B, 2C, 2D.) Officers then placed the driver and the passenger under arrest. Officers recovered three cell phones from the driver and the passenger: one iPhone and two Samsung phones.

After being taken into custody, the passenger identified himself as Juan Manuel Florez.[3] At 11:05 a.m., the passenger signed a Spanish language Advice of *Miranda* Rights Form (Gov Hrg Ex. 4; ECF No. 49-7), but he declined to speak with narcotics investigators.

---

[2] Trooper Miller also testified that his suspicions were raised by the fact that the driver appeared not to remember the name of his passenger, with whom he had driven all the way from Indiana to Hagerstown, Maryland.
[3] Once taken into custody, the driver, on the other hand, admitted that his real name was Domingo Ramirez-Roblero.

Later, officers had the suspected narcotics tested at the Maryland State Police Hagerstown Barrack Forensic Laboratory. Two of the kilogram packages were found to be fentanyl and the third was found to contain and mixture of heroin and fentanyl. On August 10, 2020, Trooper Miller applied for and received warrants signed by a judge of the District Court of Maryland for Allegany County to search the contents of the three recovered phones. (Gov. Hrg Exs. 3A, 3B; ECF Nos. 49-5, 49-6.)

Subsequent investigation revealed that the passenger's name was not Juan Manuel Florez. A December 2020 fingerprint examination matched fingerprint cards associated with the name Alexander Juarez-Sanchez and with proceedings connected to the voluntary departure of Juarez-Sanchez from the United States on February 10, 2015, and his subsequent deportations from the United States on May 3, 2016, August 1, 2018, and May 17, 2019.[4] On May 21, 2021, Juarez-Sanchez was interviewed by an ICE Deportation Officer in Baltimore. The officer provided him with a Spanish-language document setting forth his rights. Juarez-Sanchez signed a Spanish-language document waiving those rights. He subsequently made statements, which were recorded in writing. (Gov. Hrg Ex. 5; Record of Sworn Statement, ECF No. 49-8.)

While Juarez-Sanchez was originally charged in the Circuit Court for Washington County, Maryland with narcotics offenses related to the August 5, 2020 traffic stop, those charges were later placed on the stet docket in favor of federal prosecution. *See* Case No. C-

---

[4] Trooper Miller testified at the motions hearing that he recognized the Defendant Alexander Juarez-Sanchez as the passenger in the white Honda Accord from the August 5, 2020 traffic stop.

5

21-CR-20-469 (Cir. Ct. Washington Cnty.).[5] On May 24, 2021, Juarez-Sanchez appeared before Magistrate Judge Coulson of this Court for his Initial Appearance on the Indictment returned against him. Trial in this matter is set for May 23, 2022.

## ANALYSIS

### I. Motion to Suppress Tangible and Derivative Evidence (Traffic Stop)

Defendant Juarez-Sanchez has moved to suppress the fruits of the August 5, 2020 traffic stop. Specifically, Juarez-Sanchez seeks suppression of: (1) just under 2 kilograms of fentanyl; (2) just under 1 kilogram of a heroin-fentanyl mixture; (3) $46,997.00 in United States currency; and (4) derivative evidence. As this Court stated on the record at the motions hearing, there is no basis to suppress this evidence. The United States Court of Appeals for the Fourth Circuit has recently restated the well-established standards for assessing the constitutionality of a traffic stop:

> A traffic stop "constitutes a 'seizure' under the Fourth Amendment and is thus subject to a reasonableness requirement." *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015) (citing *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)). And "[b]ecause a traffic stop is more akin to an investigative detention than a custodial arrest," courts review the stop under the two-prong standard in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *Id.* Under *Terry*, a traffic stop is reasonable if (1) the stop is legitimate at its inception and (2) the officer's actions during the stop are reasonably related in scope to the basis for the stop. *See United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018).

*United States v. Perez*, No. 20-4285, 2022 U.S. App. LEXIS 9405, at *8 (4th Cir. Apr. 7, 2022).

The August 5, 2020 traffic stop was legitimate at its inception. If an "officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the

---

[5] Juarez-Sanchez was charged in the state case under the name Juan Manuel Florez, the name he provided to law enforcement officers on August 5, 2020.

Fourth Amendment." *United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993). "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. As this Court concluded on the record at the motions hearing, Trooper Miller had probable cause to stop the white Honda when he witnessed a traffic violation: the driver of the white Honda was following too closely behind another vehicle. *See* Md. Code Ann., Transp. § 21-310 (making it unlawful to follow another vehicle more closely than is "reasonable and prudent"); *see also United States v. Gibbs*, 680 F. App'x 184, 185 (4th Cir. 2017) (upholding a traffic stop based on § 21-310).

In addition, officers did not extend the traffic stop beyond its initial scope until they had probable cause to believe that there was contraband in the car. A traffic stop is a seizure, but "the Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention." *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). An officer does not need separate reasonable suspicion to justify using a canine during an otherwise legitimate traffic stop "because a dog sniff is not a search" for Fourth Amendment purposes. *United States v. Branch*, 537 F.3d 328, 335-36 (4th Cir. 2008) (citing *Illinois v. Caballes*, 543 U.S. 405, 408-09, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005)). But an alert from a drug sniffing dog gives probable cause to search a vehicle. *See Florida v. Harris*, 568 U.S. 237, 246-47, 133 S. Ct. 1050, 185 L. Ed. 2d 61 (2013).

In this case, Trooper Miller encountered a driver who had neither a driver's license nor any other form of identification. The driver was not able to identify readily the owner of the vehicle. The driver's hands trembled, and his forehead perspired as he answered Trooper Miller's questions. Based on the forgoing, Trooper Miller called in a canine team while he

7

reported the Honda's tags to a dispatcher to run a search. As the canine team was completing its sniff, the dispatcher informed Trooper Miller that the Honda's tags were expired. Trooper Miller could not have allowed the driver, who had no driver's license, to leave the scene in the Honda, which bore expired tags. The traffic stop would have been extended whether or not Trooper Miller called in a canine team. Accordingly, this Court concludes that the officers' actions with respect to the August 5, 2020 traffic stop were reasonably related to the scope of the stop until the canine alert gave them probable cause to search the Honda.[6] Therefore, the Defendant's Motion to Suppress Tangible and Derivative Evidence (ECF No. 24) is DENIED.

## II.     Motion to Suppress Tangible, Digital, and Derivative Evidence (Cell Phone Searches)

The Defendant has moved to suppress evidence related to the searches of the following two cell phones which were recovered on August 5, 2020: (1) a Samsung Galaxy A10e, serial no. 353290113395768 and (2) a Samsung A10e, serial no. 35962010873088.[7] These phones were searched pursuant to warrants signed by a judge of the District Court of Maryland for Allegany County. Again, as this Court stated on the record in open court, there is no basis to suppress the fruits of these searches. The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause,

---

[6] Furthermore, Juarez-Sanchez has no standing to challenge the actual search of the vehicle. "A passenger in a car normally has no legitimate expectation of privacy in an automobile in which he asserts neither a property interest nor a possessory interest and where he disclaims any interest in the seized object." *United States v. Carter*, 300 F.3d 415, 421 (4th Cir. 2002). Juarez-Sanchez has claimed no possessory interest in the white Honda.

[7] At the motions hearing, Juarez-Sanchez conceded that the iPhone recovered on August 5, 2020 was not associated with him and that he was not challenging the search of that phone because he did not have a reasonable expectation of privacy in it.

8

supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Supreme Court of the United States "has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible." *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975) (citing *Johnson v. United States*, 333 U.S. 10, 13-14 (1948)). The magistrate is required "simply to make a practical, commonsense decision whether, given all the circumstances in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Significantly, the Fourth Amendment exclusionary rule does not bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a magistrate that is later found to be invalid. *United States v. Leon*, 468 U.S. 897, 913-14 (1984). The evidence will be suppressed only if (1) the issuing judge was misled by information that the affiant knew or should have known was false, (2) the judge "wholly abandoned" her neutral role, (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is so facially deficient that no reasonable officer could presume it to be valid. *Id.* at 923 (citations omitted).

When a defendant challenges a search warrant, the Government bears the burden of proof by a preponderance of the evidence at a suppression hearing. *See United States v. Matlock*, 415 U.S. 164, 177-78 n.14 (1974). In reviewing the search warrant, this Court must show "great deference" to the probable cause determination of a magistrate judge. *Blackwood*,

9

913 F.2d at 142. "[T]he task of the reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

The two warrants at issue satisfy the three components of the Fourth Amendment's warrant requirement. *See Dalia v. United States*, 441 U.S. 238, 255 (1979). First, there is no allegation that Judge Bean of the District Court of Maryland for Allegany County was anything but neutral and detached in his review of the warrants in question.

Second, the warrants are supported by ample probable cause. The affidavits in support of the warrants detail the affiant's 25 years of training and experience with the Maryland State Police. They also detail the August 5, 2020 traffic stop during which the phones in question were seized and which led to the discovery of kilogram quantities of suspected narcotics and over $46,000 in cash. The affidavits describe that laboratory testing later confirmed that the substances in question were in fact fentanyl and a heroin-fentanyl mixture. The affidavits also explain that the affiant has training and experience regarding the use of cell phones in drug trafficking. As Judge Chuang of this Court has recently summarized:

> Furthermore, courts can rely on an affiant's training and experience in making a probable-cause determination, and here, the special agent submitting the affidavit stated that based on his experience, there is a connection between drug dealing and cell phones. *See Ornelas v. United States*, 517 U.S. 690, 700, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996). Specifically, courts have acknowledged that a cell phone is "a recognized tool of the trade in drug dealing," *United States v. Slater*, 971 F.2d 626, 637 (10th Cir. 1992), and that an affiant's knowledge, training, and experience of drug dealers' use of cell phones in the trade can support a finding of probable cause, *see United States v. Gibbs*, 547 F. App'x 174, 179 (4th Cir. 2013) (holding that a search warrant authorizing GPS monitoring

>  of a cell phone was supported by probable cause where the affidavit recounted the user's "extensive drug dealing activities"); *United States v. Harris*, No. 15-0170, 2016 U.S. Dist. LEXIS 48445, 2016 WL 1441382, at *11-12 (E.D. Va. Apr. 11, 2016) (stating that courts have found probable cause "to search a cell phone" where it was "discovered in proximity to crime or contraband" because it will "almost invariably contain incriminating evidence").

*United States v. Worthy*, No. TDC-18-0062, 2019 U.S. Dist. LEXIS 56275, at *4-5 (D. Md. Apr. 1, 2019).

Third, the warrants satisfy the particularity requirement. Although electronic devices like cell phones and laptops contain vast amounts of personal data, warrants authorizing searches of these devices are not subject to a heightened particularity requirement. *See United States v. Grinder*, CCB-17-0226, 2018 WL 2943235, at *5 (D. Md. June 12, 2018) (rejecting argument that warrant for cell phone search "requires a more robust particularity requirement" and noting that Government had heeded Supreme Court authority, notably *Riley v. California*, 134 S. Ct. 2473, 2482 (2014), by obtaining a warrant for cell phone data); *United States v. Christian*, 1:16-cr-2017 (LMB); 2017 WL 2274328, at *10 (E.D. Va. May 24, 2017) (acknowledging that a sometime in the future the law "may impose unique particularity requirements on cell phone ping warrants" but that day had not yet come); *United States v. Will*, 5:15-CR-6, 2015 WL 3822599, at *13 (N.D.W.Va. June 19, 2015) (holding that warrant which authorized search and seizure of "any and all computers, hard drives, cell phones, digital media storage devices" located in Defendant's home satisfied the requirements of the Fourth Amendment). The warrants in this case set forth the specific phones to be searched for evidence related to drug trafficking crimes. The warrants also detail the files to be searched. Accordingly, the warrants satisfy the particularity requirement.

In any event, the *Leon*, 468 U.S. 897, good faith exception applies to these warrants. There is no allegation by Juarez-Sanchez that that the affidavits contained deliberately falsified information or that the issuing judge was biased in some manner. Juarez-Sanchez claims that the affidavits were "so deficient that no objectively reasonable officer" could have relied in good faith on them, but he offers no support for that bald declaration. (ECF No. 25 at 3.) As noted above, there is no heightened particularity requirement for warrants to search cell phone data. Accordingly, there is simply no basis to suppress the fruits of the searches of the two Samsung phones associated with Juarez-Sanchez. The Defendant's Motion to Suppress Tangible, Digital, and Derivative Evidence (ECF No. 25) is, therefore, DENIED.

### III.   Motion to Suppress Statements

Finally, the Defendant has moved to suppress "any statements, admissions, or confessions" made: (1) during his encounter with law enforcement on August 5, 2020 and (2) while questioned by Immigration and Customs Enforcement ("ICE") agents on May 21, 2021. Again, as this Court stated on the record at the motions hearing, there is no basis to suppress these statements.

The Fifth Amendment privilege against self-incrimination provides that "[n]o person. . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amendment V. In *Miranda v. Arizona*, the Supreme Court established a prophylactic, procedural mechanism that safeguards a defendant's Fifth Amendment privilege when that defendant is subject to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *see also Dickerson v. United States*, 530 U.S. 428, 444, (2000) (reaffirming *Miranda* as "a

constitutional rule."). "Before conducting a custodial interrogation of a suspect, law enforcement officials must inform the suspect that he has the right to remain silent, that his statements may be used against him at trial, and that he has the right to an attorney during questioning." *United States v. Wilder*, 304 F. Supp. 3d 464, 469 (D. Md. 2018). "An individual subject to custodial interrogation may waive his *Miranda* rights; however, for such a waiver to be valid, it must be voluntary, knowing, and intelligent." *United States v. Silva*, No. 2:15-cr-1, 2015 U.S. Dist. LEXIS 57609, at *18 (N.D.W. Va. Apr. 10, 2015) (citing *United States v. Cardwell*, 433 F.3d 378, 389-90 (4th Cir. 2005)). "[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14, (1974); *Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986) ("Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence."); *United States v. Robinson*, 404 F.3d 850, 860 (4th Cir. 2005).

 **A.** **August 5, 2020 Statements**

The Defendant has offered no specific argument as to why his statements to law enforcement on the day of the traffic stop should be suppressed. Moreover, the Government has represented that the only statements stemming from Juarez-Sanchez's August 5, 2020 arrest it may seek to introduce at trial "were the false statements the defendant made about his identity." (ECF No. 49 at 22.) It is well established that

> [r]outine questions attendant to legitimate police procedures do not require *Miranda* warnings. *See Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 L. Ed. 2d 528, 110 S. Ct. 2638 (1990); *United States v. Morrow*, 731 F.2d 233, 237 (4th Cir.

13

1984) (holding that *Miranda* warning not required for taking of basic biographical information such as name, age, etc.)

*United States v. Han Zhang*, No. 99-4901, 2000 U.S. App. LEXIS 15979, at *4 (4th Cir. July 11, 2000). The proffered questions and statements fall well within the scope of this exception. *See United States v. D'Anjou*, 16 F.3d 604, 608 (4th Cir. 1994) ("there exists an exception to *Miranda's* coverage for routine booking questions securing biographical data necessary to complete booking or pretrial services"). In addition, the Defendant has offered no argument that his statements were involuntary or that his will was "overborne" by coercive police conduct. *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir. 2002). Therefore, there is no basis to suppress the Defendant's August 5, 2020 statements to law enforcement.

  **B.**  **May 21, 2021 Statements**

Nor is there any basis to suppress the Defendant's May 21, 2021 statements to an ICE Deportation Officer. The record reflects that that Juarez-Sanchez was indeed subject to custodial interrogation by ICE officials and that he waived his rights and agreed to speak to those officials. (ECF No. 49-8.) The Defendant has presented no specific argument that his waiver was in any way not knowing, voluntary, or intelligent. Accordingly, the Defendant's Motion to Suppress Statements (ECF No. 26) is DENIED.

**IV.**  **Motion for Leave to File Additional Pretrial Motions**

The Defendant has requested leave to file additional pretrial motions as he completes his review of the discovery in this matter. This motion was filed on September 13, 2021 by Juarez-Sanchez's prior counsel, Assistant Federal Public Defender Jeffrey Dahlberg. After Mr. Dahlberg withdrew from the case and Mr. Guillaume entered his appearance, this Court granted a consent motion to extend the deadline to file pretrial motions through February

14

28, 2022. (Order, ECF No. 45.) No additional motions have been filed. Both Juarez-Sanchez and the Government will have the opportunity to file motions *in limine* in advance of the pretrial conference set for May 17, 2022 at 4:00 p.m. Accordingly, this motion is MOOT.

## CONCLUSION

For the reasons stated above, it is HEREBY ORDERED this 26th day of April, 2022 that the Defendant's motions to suppress (ECF Nos. 24, 25, 26) are DENIED. The Defendant's Motion for Leave to File Additional Pretrial Motions (ECF No. 27) is MOOT.

_____/s/_____
Richard D. Bennett
United States District Judge